IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSEPH THOMAS ASCUE, | ) | |
|     Petitioner, | ) | Civil Action No. 7:20cv00735 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, Director, | ) | By: Michael F. Urbanski |
|     Virginia Dept. of Corrections,[1] | ) | Chief United States District Judge |
|     Respondent. | ) | |

Joseph Thomas Ascue, a former Virginia inmate currently on probation, has filed pro se a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2017 conviction for DWI maiming—victim permanently impaired, under Virginia Code § 18.2-51.4, for which he was sentenced to five years in the Department of Corrections, with two of those years suspended. The respondent has filed a motion to dismiss, alleging that the petition is untimely, among other defenses. After reviewing the record, the court concludes that the respondent's motion must be granted, and Taylor's petition must be dismissed as time barred.[2]

I.

On January 5, 2016, a Tazewell County Circuit Court grand jury indicted Ascue for DWI maiming, DWI, and refusal of a blood or breath test, all alleged to have occurred on

---

[1] Under Rule 2(a) of the Rules Governing Section 2254 Cases, if the petitioner is in custody pursuant to a state court judgment, the respondent in a habeas petition shall be the state officer who has custody. That officer is Harold Clarke, Director of the Virginia Department of Corrections. On motion of the respondent, the named defendant herein is changed to Harold W. Clarke, Director of the Virginia Department of Corrections, and the Clerk shall update the docket accordingly.

[2] The court notes that Ascue has requested a jury trial in this matter. Under 28 U.S.C. § 2241, the power to grant a writ of habeas corpus is invested in the court or any judge thereof within the jurisdiction of the matter. There is no provision for a jury trial for this matter.

September 5, 2015.  CCR[3] at 121–122.  Ascue was arrested on January 12, 2016, and he posted bond the same day.  Id. at 114, 118–119.  He retained counsel, who filed a motion for discovery on January 19, 2016.  Id. at 108–110.  On February 19, 2016, the Commonwealth filed a certificate of analysis from the Department of Forensic Science, which noted that Ascue had a BAC of .313%.[4]

On July 26, 2016, Ascue pled guilty to DWI maiming, pursuant to a plea agreement, and the court took the matter under advisement for six months, setting the new date for January 23, 2017.  Id. at 95–96.  The terms of the agreement called for Ascue to plead guilty to the DWI maiming; the court would then take all three charges under advisement for six months.  Ascue acknowledged in the agreement that he waived his right to a jury trial and most of his appellate rights.  He further acknowledged that the written agreement "contains all the terms of the agreement between them."  Id. at 98–99.  The agreement made no provisions for terms of any sentence to be imposed.  Based upon a letter he received from his attorney and included in his response to respondent's motion to dismiss, Ascue understood that he would have the opportunity to seek a reduction of the charge to a misdemeanor if he successfully complied with all terms of his bond during the period of advisement.  ECF 13 at 52.  At the sentencing hearing later, the Commonwealth Attorney denied that such a term had been contemplated or agreed to by his office.  Hr'g Tr. at 65, December 11, 2017.

---

[3] References herein to the Tazewell County Circuit Court record will be abbreviated "CCR," using the page numbers on the bottom center of each page in the record electronically filed with this court.

[4] As petitioner has pointed out in his petition and attachments, the certificate of analysis notes that the blood was received at the lab on September 14, 2015, approximately nine days after the alleged date of offense.

On January 23, 2017, the matter was continued by agreement of counsel until March 7, 2017. CCR at 94. The record reflects several additional continuances thereafter, at which Ascue apparently represented himself (as only his endorsement appeared on the continuance orders). In September 2017, Ascue dismissed his attorney and hired a new one.[5] She filed a motion for discovery and a request for the certificate of analysis on September 25, 2017. Id. at 82–87. Ascue asserts that counsel also filed a motion to withdraw his guilty plea, but that motion does not appear in the records from the Tazewell County Circuit Court, nor does it appear that the court ever ruled on the motion. However, when the matter finally returned to court on December 11, 2017, nearly a year and a half after findings were first taken under advisement, the Commonwealth presented its evidence, as follows:

Officer Joshua Asbury of the Bluefield, Virginia Police Department was on traffic patrol sitting on the side of College Avenue in Bluefield when he heard a loud noise. He looked up and saw a maroon car cresting the hill at Bluefield College. The officer's radar unit clocked the car at 65 mph in a 35-mph zone. Officer Asbury also saw that a piece of the front bumper or spoiler was dragging the ground underneath the car. The maroon car approached an intersection traffic light, where at least two vehicles were stopped in the through-lane and a pickup truck with a trailer was stopped in the left turn lane. Before the officer could move to initiate a traffic stop, the maroon car crashed into the three vehicles stopped at the light without ever applying his brakes. Hr'g Tr. at 5–10.

As soon as he reached the scene, Officer Asbury first attended to a man later identified as Sonny Gentle, the driver of a black car that had been in front of the through

---

[5] The Order of Substitution was entered on October 10, 2017. CCR at 81.

3

lane but was knocked 180 degrees and into the left-turn lane, facing the wrong direction. Gentle was unresponsive, and Asbury requested fire and rescue assistance. The maroon car had struck a gold minivan with such force that it was knocked into the back of Gentle's car. The rear of Gentle's car was destroyed, and the rear tires had been pushed into the back seat of the car; the steering wheel column was bent such that the steering wheel was parallel with the floorboard. The gold minivan suffered front and rear damage, including the right rear seat (where a toddler was belted into a safety seat) which became detached from the frame of the van. The pickup truck with trailer in the left lane sustained only minor damage to its trailer. The front of the maroon car was smashed in, with multiple airbag deployment, and blood on the steering wheel airbag. Id. at 10–19; CCR at 46–65.

      While rescue was attempting to extract Gentle from his car, Gentle regained consciousness, but was incoherent. Gentle did not want to go in the ambulance, but he was taken anyway, because he lacked the mental capacity at that time to refuse the treatment. Officer Asbury had to pry the driver's door open on the maroon car, and the driver, identified as Dr. Joseph Thomas Ascue, was bleeding from the mouth and had lacerations on his head, arms, and legs. Asbury also noted a strong odor of alcohol. Upon removing Ascue from the car, Asbury planned to administer a field sobriety test, but Ascue was too unsteady on his feet and one of his legs was bleeding significantly, so he escorted Ascue to the police cruiser. Ascue refused transportation to the hospital, saying that he was a doctor and did not need to go to the hospital, but the paramedics bandaged his leg on scene to stop the bleeding.

Ascue initially said that someone had pulled out in front of him, but Asbury testified that he saw no one pull in front of the maroon car, and he was able to observe the car from the top of the hill all the way to the point of impact. Ascue refused to consent to a breath test or blood test. The only medical information Ascue provided was that he had a bad knee and a bad shoulder, and he was taking antidepressants. Asbury drove Ascue to the police department and secured a warrant to obtain a blood sample from Ascue. While in route, Ascue kept asking to be dropped off at his home, which was less than 100 yards from the site of the accident. Asbury then took Ascue to Tazewell Community Hospital, where the blood sample was drawn, but Ascue refused any further medical treatment. The officer then drove Ascue to the Tazewell County Jail. During that time, he testified that Ascue was belligerent, cursing and screaming that he was going to sue the police. Hr'g Tr. at 20–23.

After counsel argued objections to the certificate of analysis coming into evidence, Ascue chose to withdraw his objection, and the certificate was admitted, showing the BAC of .313%. Id. at 26–32.

Sonny Gentle, from Bluefield, West Virginia, testified that he was taking his passenger home. The last thing he remembers is stopping at the traffic light and seeing a vehicle pull up beside him on the left, pulling a trailer. Then he woke up in the hospital. He described his injuries as his "head cracked open like an egg" and he nearly lost his leg. Id. at 35. Gentle underwent two surgeries after the accident and still has "a piece of car" in his leg. He has trouble sleeping more than two hours through the night because of pain and he gets frequent headaches and memory loss. He was walking with a cane at the hearing and testified that he had not required a cane to walk before the accident. He incurred over

$16,000 in medical bills not reimbursed by Medicare. On cross examination, Gentle acknowledged that he had been on disability and Medicare since a head-on collision with a Suburban in 2001. He also admitted a $100,000 settlement with Ascue's insurance company and acknowledged his signature on the release form. Id. at 33–50.

Alvin Ascue, petitioner's brother, testified about petitioner's medical history and employment record. At the time of the accident, petitioner suffered from heart problems. He had five stents in his heart already and was awaiting clearance from the V.A. hospital for cardiac bypass surgery. On the date of the accident, petitioner was having chest pains and was on his way home to get his medication. He was taking prescriptions for his heart, a blood thinner, antidepressants, and anti-anxiety medication. Petitioner worked as an emergency room physician for twenty years and then went into private practice. His private practice was not financially successful. Petitioner also served as a flight surgeon during Operation Iraqi Freedom; he was discharged from the military after a repelling accident, with 100% disability because of PTSD with anxiety. Id. at 51–60.

Following the evidence, the court entered a finding of guilty on the DWI maiming charge. He also sentenced Ascue to five years in the penitentiary, with two years suspended, conditioned on three years' probation. The court indefinitely suspended Ascue's driver's license. The final judgment order was entered December 14, 2017. CCR at 37–39. On December 28, 2017, Ascue filed a motion for reconsideration, which the court denied on January 5, 2018. Id. at 31, 35–36.

Ascue timely filed a notice of appeal to the Court of Appeals of Virginia. However, his attorney inadvertently failed to file a petition for appeal when due. On June 6, 2018, the

appellate court dismissed the appeal for failure to comply with the Rules of Court. Id. at 16. Exactly one year later, on June 6, 2019, counsel filed a state habeas petition in the Supreme Court of Virginia on behalf of Ascue and then withdrew, as Ascue had already filed a complaint against her with the Virginia State Bar. ECF 13 at 2–15, 32–34. By opinion dated March 26, 2020, the court denied the state habeas petition. Ascue's motion for rehearing was denied on July 8, 2020. On December 8, 2020, the current § 2254 petition was filed, alleging two claims of ineffective assistance of counsel.

## II.

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. This statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsection A is the only one applicable to Ascue's case, as he has not alleged any facts to support application of subsections B, C, or D. Therefore, the court must determine

the date on which Ascue's judgment became final to determine when the one-year statute of limitations began running—and when it ended. The Court of Appeals dismissed Ascue's appeal on June 6, 2018. Under Virginia Code § 8.01-671(C), Ascue had thirty days thereafter to appeal the dismissal. When the appeal was not perfected by July 6, 2018, the judgment became final. Greer v. Commonwealth, 796 S.E.2d 422, 67 Va. App. 324 (2017). On July 6, 2018, Ascue's federal habeas statute of limitations began to run. The petition filed December 8, 2020, was filed more than one year after that date.

Three possible ways exist for a petitioner to avoid the harsh effect of the statute of limitations: Statutory tolling, equitable tolling, or actual innocence. As discussed more fully below, none of these will save Ascue's untimely federal petition in this case.

**A. Statutory Tolling**

Section 2244(d)(2) tolls the statute of limitations during the time in which a "properly filed application for State post-conviction or other collateral review . . . is pending." A state habeas petition does not delay the start of the limitation period; rather, the period starts running when the state judgment becomes final, but the clock is stopped when a state habeas proceeding is properly filed. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). When the state habeas is no longer pending, the clock starts running again, picking up where it left off; it does not start anew. Id. at 328.

When Ascue's state habeas petition was filed on June 6, 2019, 335 days of the 365-day federal statute of limitations had run. The clock was tolled with thirty days remaining on the statute. Once the Supreme Court of Virginia denied Ascue's habeas petition and his petition for rehearing, July 8, 2020, the statute began running again. The thirty days

8

remaining expired on August 7, 2020. His federal petition was not filed for another four months thereafter. Accordingly, statutory tolling does not save Ascue's untimely petition.

**B. Equitable Tolling**

The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. Holland v. Florida, 560 U.S. 631, 636, 649 (2010). The court will not address diligence, because Ascue cannot satisfy the extraordinary circumstances requirement. The only reason offered for the late filing of his federal habeas petition is that Ascue did not know he had the right to pursue this remedy or that it even existed. Ignorance of the law is not an extraordinary circumstance nor a basis for equitable tolling, even when a litigant is representing himself. United States v. Sosa, 364 F.3d 507, 512 ( 4th Cir. 2004). Even a lawyer's simple negligence is not an extraordinary circumstance that equitably tolls the statute of limitations. Holland, 560 U.S. at 651–52; Lawrence v. Florida, 549 U.S. 327, 336 (2007). Because Ascue has not shown the existence of extraordinary circumstances that prevented him from filing his petition timely, equitable tolling is not available to him.

**C. Actual Innocence**

In balancing the "societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice exception" to the statute of limitations when a litigant presents new evidence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant. McQuiggin v. Perkins, 569 U.S. 383,

393–95 (2013). When a petitioner presents new reliable evidence, "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," the habeas court must consider the new evidence along with the trial evidence to decide whether, in the absence of constitutional error, petitioner likely would not have been convicted. Schlup v. Delo, 513 U.S. 298, 316, 324 (1995).

Ascue has suggested that the certificate of analysis, relied upon for his BAC, has information proving that it was not his blood, because the test found no evidence of an anti-anxiety medicine in his system that he had been taking for three years. He also alleges that his heart condition caused him to black out, causing the accident, not intoxication. There are two reasons that this evidence does not allow Ascue to "pass through the gateway" of actual innocence to argue his constitutional ineffective assistance of counsel claims. First, the evidence is not new. The certificate of analysis was filed with the court in February 2016, months before Ascue tendered his plea. Evidence is new "only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1028 ( 8th Cir.2001). See also Hubbard v. Pinchak, 378 F.3d 333, 341 (3d Cir. 2004); Hancock v. Davis, 906 F.3d 387, 390 (5th Cir.2018), cert. denied, No. 18-940, 2019 WL 266857 (U.S. June 17, 2019); Rowe v. Clarke, No. 7:18CV00383, 2019 WL 4235240 (W.D. Va. Sept. 6, 2019) (noting that the Fourth Circuit has not addressed this issue). Likewise, Ascue's brother testified about petitioner's heart condition before the conviction and sentence were imposed, so that is not new evidence, either.

The second reason this evidence is not sufficient to overcome the time-bar is that, combined with the speed of the accident, Ascue's prior explanations for the accident, the

10

officer's observation of his demeanor at the scene, and his knowing, voluntary plea of guilty to the charge, the evidence is not such that one would say that no reasonable juror could find him guilty of DWI maiming. There might be a legitimate dispute about whether the BAC was as high as reflected in the certificate of analysis, but that is not the ultimate question. The evidence Ascue would rely upon to establish actual innocence is not sufficient to persuade the court that he would not have been convicted but for a constitutional error. Therefore, "actual innocence" does not save his otherwise time-barred petition.

### III.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. Gonzalez v. Thaler, 565 U.S. 134, 140–41 (2012). Ascue has not made such showings in this case.

For the foregoing reasons, the court will grant respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

**ENTER:** This 29th day of September, 2021.

Michael F. Urbanski
Chief U.S. District Judge
2021.09.29 15:03:52
-04'00'

Chief United States District Judge